LOTTINGER, Judge.
This is a suit in tort for physical damages allegedly sustained by petitioner *802 while working as a domestic servant in the home of Dr. Joseph M. Edelman. The defendants are Dr. Joseph M. Edelman and his insurer, Great American Insurance Company. The Lower Court rejected the demands of the petitioner and dismissed her suit. The petitioner has taken this appeal.
We are favored with a very comprehensive and thorough written opinion by the Lower Court, wherein it set forth its reason for dismissal below, and will adopt said opinion in toto. The said opinion is as follows:
“On May 18, 1957 plaintiff had been employed by the defendant, Dr. Joseph M. Edelman, for approximately two years. As a part of her duties she did the laundry work for defendant’s family. The laundry room is a part of the garage building. This combination garage-laundry building is detached from and to the rear of defendant’s residence. A concrete walk approximately three and one-half feet in width leads from the residence to the garage-laundry. At the rear of the residence there is a hydrant to which from time to time an ordinary garden hose was attached for the purpose of furnishing water to various points on the lawn to the rear of the residence. When the hose was so attached for this purpose it necessarily ran across the concrete walk leading from the residence to the garage-laundry.
“Plaintiff’s testimony is that on May 18, 1957 between 2:30 and 3 :00 o’clock p. m. she went from the residence to the laundry for a basket of clothes; that she returned with the basket of clothes under her right arm and resting on her right hip; that as she was so returning to the residence, walking on the concrete walk, she tripped on the garden hose which was on the walk, causing her to fall and strike her left knee on the concrete walk. In this suit she seeks to recover for the injuries alleged to have been sustained by her as a result of the fall. The other defendant here is the insurer of Dr. Edelman.
“Other than the testimony of plaintiff herself there is no evidence as to the occurrence of the alleged accident. The record shows that Mrs. Edelman was at home at the time in question. Plaintiff testified that when she fell her knee felt numb and that she did not get up for two or three minutes; that she proceeded into the house and went on with her usual duties; and that it was the following week before she mentioned the fall to Mrs. Edel-man. The testimony of Mrs. Edelman is that during the week following the date in question plaintiff complained of stiffness in her knee and referred vaguely to a fall some days earlier as the possible cause of the trouble. There is no evidence that she gave any details with reference to the fall.
“Pretermitting for the moment the question of whether or not plaintiff has established the occurrence of an accident by a preponderance of the evidence, we consider the question of negligence.
“It is not disputed that when the hose was in use on the back lawn it ran across the walk. Since plaintiff had been employed by defendant for approximately two years her duties had required her to make many trips from the residence to the laundry, and it must be assumed that on many of these occasions the hose ran across the walk, all to the knowledge of plaintiff. If its being so placed constituted any hazard whatsoever, which the court does not here so hold, plaintiff was well aware of this hazard from long observation and experience.
“As to the exact location of the hose at the time in question, plaintiff testified that about eight or ten inches of the hose was on the walk. She did not elaborate on this point. Whether she meant that an eight or ten inch portion *803 of a loop of the hose rested on the walk, or whether eight or ten inches of one end of the hose rested on the walk, is not shown by the record. In either case it did not occupy more than ■ten inches of a forty-two inch walk.
"According to plaintiff’s testimony her round trip to the laundry was made in about five minutes. There is no evidence that there was any change in the position of the hose during this time, and nothing that indicates the remotest possibility of any such change. On her outbound journey plaintiff ■could and should have seen the hose if it was on the walk. She testified that on her return she could not look ■down because of the loaded basket she was carrying under her arm and resting on her hip. With that conclusion the court cannot agree. Considering the position of the basket, she could have looked down as freely as if she had been carrying no load. A slight forward movement of her neck was all that would have been necessary.
“In my opinion plaintiff has failed to prove the occurrence of an accident by a preponderance of the evidence. Assuming, however, that an accident occurred as contended by plaintiff, in my opinion the evidence does not show negligence on the part of defendant but does show negligence on the part •of plaintiff.
“In view of the above conclusions it is not necessary to consider the medical evidence except as it may relate to the question of the occurrence of an accident.
“Several days after the date of the alleged accident, and upon plaintiff complaining of discomfort in her left knee, Mrs. Edelman sent her to Dr. F. C. McMains, an orthopedic surgeon in this city. Dr. McMains administered conservative treatment to the knee for approximately three months. At the end of that period he felt that plaintiff had reached an almost complete recovery. She had already returned to light duty as a domestic servant. The knee then commenced swelling again and Dr. McMains concluded that surgery was indicated. About four months after the surgery Dr. McMains was again of the opinion that plaintiff had reached almost complete recovery. Again she had been doing light work for some six or eight weeks.
“In January 1958 plaintiff returned to Dr. McMains with pain and swelling in both knees. The doctor then concluded that he was mistaken in his original diagnosis and that plaintiff’s case was one for a specialist in internal medicine. He referred her to Dr. Clay A. Waggenspack, Jr., a specialist in that field.
“In the latter part of 1956 and the early part of 1957, prior to the date of the alleged accident, Dr. Waggens-pack had treated plaintiff for obesity and for an ear ailment which brought on spells of vertigo from time to time. One of these treatments was on January 2, 1958. He did not see plaintiff again until she was referred to him by Dr. McMains on January 24, 1958. Both of plaintiff’s knees were then involved. By means of recognized laboratory tests Dr. Waggenspack diagnosed plaintiff’s ailment as rheumatoid arthritis in both knees, and treated her accordingly. He last saw her in April 1958.
“Neither Dr. McMains nor Dr. Wag-genspack attributed plaintiff’s knee ailment to trauma, although Dr. McMains stated that his surgical findings could have resulted from trauma or from any one of several other causes.
“Dr. Moss M. Bannerman, an orthopedic surgeon of this city, examined plaintiff on October 1, 1958 and on January 14, 1959. Dr. I. L. George, also an orthopedic surgeon of this city, examined her on April 28, 1958 and on *804 February 5, 1959. Both testified that plaintiff has some residual disability in her left knee. Neither examined the right knee. To each of them plaintiff related the alleged accident of May 18, 1957, and each attributed plaintiff’s disability in her left knee to trauma.
“While the court is not obliged to resolve the question here, it may not be amiss to say that in my opinion it has not been shown by a preponderance of the evidence that plaintiff’s present disability resulted from trauma.
“The writer does not often comment on the credibility of a witness. However, since there is no evidence here of the occurrence of an accident except the testimony of plaintiff herself, some comment on her credibility, appears to be in order. Without discussing the testimony in detail, it suffices to say that plaintiff consistently imposed on the generosity of a kind and indulgent employer. It further appears from her own testimony that she was often careless in her statements relating to other matters. So far as I can determine from the evidence she made no specific contention that she tripped on a garden hose, fell and injured her left knee, until about eight months after the date of the alleged accident when she was referred by Dr. McMains to Dr. Waggenspack. In his report of April 18, 1958, which is filed in evidence as P-5, Dr. Wag-genspack says:
“ 'Repeatedly since January, this patient has asked me whether Rheumatoid Arthritis was traumatic in origin and repeatedly I have assured her that to the best of our knowledge it is not.’
“For the foregoing reasons there is judgment rejecting plaintiff’s demands.”
We have only one thing to add to the reasons for judgment below, which is above quoted, and that is without a doubt the petitioner was at least guilty of contributory negligence. On redirect examination the petitioner admitted that when she was coming into the house from the laundry room and carrying the basket of clothes, she did see the hose over which she allegedly fell. Therefore it certainly strikes us, that if there is any negligence whatsoever on the part of the defendant, such negligence would be offset by the contributing negligence of the petitioner in slipping on, or tripping over, the hose which she knew was there. We not only are unable to find error in the decision of the Lower Court, but we are fully in accord therewith.
Counsel for plaintiff has objected to the plaintiff being cast for court costs. In arguing that the plaintiff should not be cast for costs, counsel for the plaintiff has overlooked the following statutory provision contained in LSA-R.S. 13:4528: “If the litigant exercising the privilege (to proceed in forma pauperis) is cast, he shall be condemned to pay the costs incurred by him and the costs recoverable by the other parties to the action.” In addition, counsel for the plaintiff must have overlooked the Supreme Court decision in the case of Coulon v. Anthony Hamlin, Inc., 1957, 233 La. 798, 98 So.2d 193, in which it was held that a pauper should be cast for costs in the event judgment is rendered against him. The decisions cited by opposing counsel to the contrary were decided prior to the Coulon case and are completely inconsistent with the statutory provision as well as the most recent expression of the Louisiana Supreme Court on the question.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by the petitioner.
Judgment affirmed.